SUTTON, J., delivered the opinion of the court, in which GUY, J., joined. COLE, J. (pp. 580-86), delivered a separate dissenting opinion.
OPINION
SUTTON, Circuit Judge.
In this insurance-coverage dispute, the insured (TMW) appeals the district court’s grant of summary judgment in favor of the insurance company (Federal). Because a relevant exclusion to coverage applies, we affirm in part and reverse in part.
I.
On December 29, 2004, TMW, acting through its subsidiary, Shain Park Associates, bought a recently constructed condominium and retail building in Birmingham, Michigan. TMW insured the Birmingham property for $10 million with Federal Insurance.
The insurance policy — an “all-risk” policy — covers any “direct physical loss or damage” to the property unless “caused by or resulting from” an excluded peril. R.65-4 at 21. Among the policy exclusions is this one:
This insurance does not apply to loss or damage (including the costs of correcting or making good) caused by or resulting from any faulty, inadequate or defective: —design, specifications, plans, workmanship, repair, construction, renovation, remodeling, grading, compaction;
of part or all of any property on or off the premises shown in the Declarations. This Planning, Design, Materials Or Maintenance exclusion does not apply to ensuing loss or damage caused by or resulting from a peril not otherwise excluded.
Id. at 35.
In May 2006, contractors hired by TMW began to renovate the building’s exterior. They discovered that the original builder had improperly constructed the exterior walls, leaving them vulnerable to water infiltration. And they observed that water had indeed entered the facility, “weakening the structural integrity of the building” by corroding its steel structure. R.69-9 at 1. After further investigation, the contractors confirmed that similar construction and deterioration problems plagued all four exterior walls. They warned TMW that, without proper repair, the building faced “potential mold growth” and “catastrophic” structural failure due to moisture exposure. Id. The repairs required TMW to remove the building’s undamaged exterior masonry. TMW estimates that it has spent $3.9 million so far to repair the building.
TMW notified Federal of the damage to the building. After performing its own inspection of the property, Federal denied TMW’s claim. Federal attributed the damage to “construction defects” and “wear and tear,” both of which the policy excluded. R.69-16 at 2. TMW filed this lawsuit in federal court, seeking a declaratory judgment that it was entitled to insurance coverage and money damages. After both parties moved for summary judgment, the district court ruled in favor of *576 Federal, deciding that TMW was not entitled to coverage. TMW asks us to take a second look.
II.
This is a diversity case — TMW hails from Delaware, with its principal place of business in Michigan, and Federal hails from Indiana, with its principal place of business in New Jersey — and Michigan law governs our interpretation of the contract. See Shields v. Gov’t Employees Hosp. Ass’n, Inc., 490 F.3d 511, 515 (6th Cir.2007). All of the traditional rules for assessing the factual record in a summary judgment motion apply, see Fed.R.Civ.P. 56(c), but so far they have made little difference. No material factual disputes were raised below. What we have instead is a matter of contract interpretation: What does the coverage exclusion mean?
The insurance policy provides that all physical loss is covered unless an exclusion applies. The key exclusion bars coverage for “loss or damage ... caused by or resulting from ... faulty ... workmanship ... [or] construction.” R.65-4 at 35. Both parties’ investigators agree that the original builder improperly constructed the building’s exterior. The faulty construction included “haphazardly installed” Ty-vek building wrap, missing or improper flashing along the siding’s edges and joints and a lack of “weep holes,” which “allow moisture in the wall cavity to drain out.” R.65-12 at 3. The investigators also agree, and the parties do not dispute, that this faulty workmanship caused the water infiltration that damaged the building’s structural steel, fireproofing and insulation. Put in terms of the insurance exclusion, the undisputed facts establish that the claimed damage was “caused by or resulting from ... faulty ... workmanship ... [or] construction.” R.65-4 at 35. So far as Federal and the district court are concerned, that is all there is to this dispute: The insurance contract contains an exclusion that directly applies to the loss claim, and accordingly Federal acted well within its rights in denying coverage.
Not so fast, TMW responds. There is more to the faulty workmanship exclusion than the “caused by or resulting from ... faulty ... workmanship ... [or] construction” language. At the end of that exclusion and the other three that go with it, the contract says that all four exclusions do “not apply to ensuing loss or damage caused by or resulting from a peril not • otherwise excluded.” R.65-4 at 35. It may be, as TMW acknowledges, that faulty workmanship allowed water to seep into the walls. But the intruding water, it argues, nonetheless amounts to a “peril not otherwise excluded” because the water caused some of the damage, and water-related damage is not otherwise specifically excluded — making it an “ensuing loss” and thus a covered loss.
Instead of carving out an exception to this exclusion, this theory of interpretation would create a virtual, if not complete, exclusion of the exclusion. When a policy excludes “loss or damages ... caused by or resulting from ... faulty ... workmanship ... [or] construction” of a building, it should come as no surprise that the botched construction will permit the elements — water, air, dirt — to enter the structure and inside of the building and eventually cause damage to both. TMW’s chain of reasoning — that water technically was the final causative agent of the damage, as opposed to the faulty construction, that “water damage” is not specifically excluded from the policy, that coverage accordingly applies — essentially undoes the exclusion.
As an “all-risk” policy, this insurance policy basically covers everything unless specifically excluded. That means the *577 number of possibilities for last-in-time “but for” causes of damage are limited only by the imagination of the reader. What if a roof contains a flawed design (think Frank Lloyd Wright, see Essex Ins. Co. v. Fidelity & Guar. Ins. Underwriters, Inc., 282 Fed.Appx. 406, 409 (6th Cir.2008)), and it leaks water into the house, which ruins one of the floors? But for the water, no damage to the floor would have occurred. Yet the contract does not exclude damages caused by “water.” Coverage? What if faulty construction allows humid summer air to enter the building, which rusts metal fixtures? But for the exposure to the summer air, no damage to the fixtures would have occurred. Yet the contract does not exclude damages caused by “air.” Coverage? What if a poorly constructed ceiling beam falls, smashing the floor below? But for the force of gravity, no damage to the floor would have occurred. Yet the contract does not exclude damages caused by “gravity.” Coverage? As in each of these examples, so too here: The very risk raised by the flawed construction of a building came to pass. To say that the risk was not covered because other elements or natural forces were the last causative agents of the damage, though to be sure utterly foreseeable causes of the damages, is to eliminate the exclusion. It is exceedingly strange to “think that a single phenomenon that is clearly an excluded risk under the policy was meant to become compensable because in a philosophical sense it can also be classified as water damage.” Aetna Cas. & Sur. Co. v. Yates, 344 F.2d 939, 941 (5th Cir.1965) (Friendly, J., sitting by designation).
But if the “ensuing loss” clause does not apply here, TMW asks, doesn’t that make it superfluous, empty words with no independent function? No. There are two possible functions served by the clause, both sufficient to defeat TMW’s argument. One is this: The clause means simply that what is not excluded is covered. The four exclusions spell out when coverage does not apply, and the caveat at the end reminds us that if an exclusion does not apply, then coverage exists. The contract repeats this coverage-off, coverage-on language or slight variations on it in seven other places in the contract, suggesting that it flows from the kind of systematic and formulaic precision, sometimes overdone precision, in which lawyers often seem to take great pleasure. No doubt, as a matter of sheer logic, the coverage-on language is never technically necessary to establish which of two binary options applies. Nor for that matter do traffic lights need a green signal. But the inclusion of the coverage-on language still serves to remind the readers that there are two sides to every coverage issue. Just as all light switches contain an “on” and “off’ designation, so it is useful to spell out when coverage applies and does not apply. All contract drafting that involves belts (certain damages are excluded) and suspenders (all damages not excluded are covered) has this quality. And “[n]othing prevents the parties from using a belt and suspenders approach in drafting the exclusions, in order to be doubly sure.” In re SRC Holding Corp., 545 F.3d 661, 670 (8th Cir.2008) (quotation marks omitted).
But even if we choose to label this type of drafting a form of redundancy, which we do not think it is, that label surely is not a fatal one when it comes to insurance contracts, including this contract, where redundancies abound. In just this one provision of the 80-page insurance contract, there are at least three truly redundant phrases, as opposed to logically redundant phrases: (1) “loss or damage”; (2) “caused by or resulting from”; and (3) “faulty, inadequate or defective.” As in so many insurance contracts, iteration is afoot throughout — from an exclusion for “war *578 and military action” to one for “fraudulent, dishonest or criminal acts or omissions” to one for flooding of “lakes, reservoirs, ponds, brooks, rivers, streams, harbors, oceans or any other body of water or watercourse” to numerous others.
Not just insurance lawyers frequently say two (or more) things when one will do or say two things as a way of emphasizing one point. Courts themselves frequently apply “arbitrary and capricious” review in administrative law cases. See, e.g., F.C.C. v. Fox Television Stations, Inc., — U.S. -, 129 S.Ct. 1800, 1811, 173 L.Ed.2d 738 (2009). But no one, I suspect, has ever seen agency action that was “arbitrary” but not “capricious.” Emblazoned on the front of the United States Supreme Court are the words “Equal Justice Under Law.” But who would defend something as “Justice Under Law” if it did not apply equally to all citizens? See In re Ocwen Loan Servicing, LLC Mortg. Servicing Litig., 491 F.3d 638, 646 (7th Cir.2007) (Posner, J.) (“The full name of the duty, both in the complaint and in the cases — ‘duty of good faith and fair dealing’ — could be thought ominously open-ended. But the full name is merely what is called a ‘doublet,’ a form of redundancy in which lawyers delight, as in ‘cease and desist’ and ‘free and clear.’ ” (quoting Bryan A. Garner, The Redbook: A Manual on Legal Style § 11.2(f) (2d ed.2006))).
All of this helps to reveal the limits of the interpretive canon upon which TMW stakes this appeal: that courts must avoid interpreting contracts to contain superfluous words. The canon is one among many tools for dealing with ambiguity, not a tool for creating ambiguity in the first place. “Where there are two ways to read the text” — and the one that avoids surplus-age makes the text ambiguous — “applying the rule against surplusage is, absent other indications, inappropriate.” Lamie v. U.S. Trustee, 540 U.S. 526, 536, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004); see Chickasaw Nation v. United States, 534 U.S. 84, 94, 122 S.Ct. 528, 151 L.Ed.2d 474 (2001). It may be that “interpreting an insurance policy to give a reasonable meaning to all provisions is preferable to interpreting the policy in a way that creates surplusage or leaves a portion of the policy useless or inexplicable,” but “surplusage alone does not make an insurance policy ambiguous.” Michigan Twp. Participating Plan v. Pavolich, 232 Mich.App. 378, 591 N.W.2d 325, 330 (1998). When “the policy is clear as written, we are bound by the specific language, and will not construe the policy to cover defendant simply to avoid a finding that there is surplus language in the contract.” Id. at 331. (Our colleague suggests that Federal never addressed this interpretation during the appeal. That may or may not be true with respect to the appellate briefs, though both parties addressed the point at one level of generality — the role (or lack of a role) of potential contract redundancy, see TMW’s Br. at 47-49; Federal’s Br. at 31 — but it clearly is not true with respect to the oral argument, where both parties addressed this precise point. See Oral Arg. at 7:30, 21:35, 25:00.)
This, however, is just one way of looking at the clause. There is another. The “ensuing loss” clause also fairly could be construed as a causation-in-fact-breaking link in coverage exclusions, establishing that independent, non-foreseeable losses caused by faulty construction are covered. Cf. Prudential Prop. & Cas. Ins. Co. v. Lillard-Roberts, No. CV-01-1362-ST, 2002 WL 31495830, at *19 (D.Or. June 18, 2002) (“[T]he ‘ensuing loss’ clause [applies] in those rare cases where the reasonable damage expected to be caused by faulty workmanship leads to another peril that causes damage beyond that normally ex *579 pected.”); Montefiore Med. Ctr. v. Am. Prot. Ins. Co., 226 F.Supp.2d 470, 479 (S.D.N.Y.2002) (“An ensuing loss provision does not cover loss caused by the excluded peril, but rather covers loss caused to other property wholly separate from the defective property itself.”).
While the faulty workmanship exclusion applies to loss or damage “caused by or resulting from” the construction defect, the “ensuing loss” provision clarifies that the insurance company could not use the exclusion to avoid coverage for losses remotely traceable to an excluded cause. Among the definitions of “ensuing” is the meaning that something “follow[s] in chronological succession.” Webster’s Third New International Dictionary 756 (2002). The clause establishes that chronologically later-in-time damages “caused” by “a peril not otherwise excluded” remain covered. If, say, the water leak in this case had shorted an electrical socket and started a fire, any fire damage would be covered in light of the “ensuing loss” clause. Thus, if, on the one hand, the damage came “naturally] and continuously]” from the faulty workmanship, “unbroken by any new, independent cause,” Michigan Sugar Co. v. Employers Mut. Liability Ins. Co. of Wisc., 107 Mich.App. 9, 308 N.W.2d 684, 686 (1981), the exclusion applies and the ensuing loss provision does not. See Berger v. Travelers Ins. Co., 379 Mich. 51, 149 N.W.2d 441, 442 (1967) (contract language referring to the “sole cause” of something means “the efficient, dominant, proximate cause”); Ely v. Wolverine Mut. Ins. Co., No. 225584, 2002 WL 362836, at *2 (Mich. Ct.App. Mar. 1, 2002) (“Michigan courts have long applied the ‘proximate cause’ standard to determine if” a loss was “caused by” or “resulting from” “a particular event.”); 7 Couch on Ins. § 101:39 (“The rule of causation as applied in the context of insurance coverage is ‘proximate cause.’ ”). But if, on the other hand, the later-in-time loss flows from a non-foreseeable and non-excluded cause, it is covered. In this instance, because defective wall construction naturally and foreseeably leads to water infiltration, the language of the exclusion, not the exception to the exclusion, ought to apply.
That leaves one lingering consideration. As the district court viewed the dispute, the identification of the faulty workmanship exclusion, together with undisputed factual evidence that there was a “but for” causal relationship between the damages and this exclusion, meant that summary judgment for Federal was in order. In view of the reality that the “ensuing loss” clause, under either way of looking at it, does not permit Federal to deny coverage for losses not proximately caused by faulty workmanship, and in view of the fact that TMW did not appear to have an opportunity to seek coverage for such losses, we think TMW should be given an opportunity to do so on remand.
A few respectful words in response to our colleague: First, we are skeptical of an interpretation that invokes the anti-redundancy canon with one breath, see Dissent at 15, then closes its lips to the redundancy problems that arise with TMW’s interpretation, see Dissent at 13 n. 1. If the ensuing loss clause provides coverage for the water damage to TMW’s walls, the only role left for the faulty workmanship exclusion is to block coverage for remedying the defects that allowed water to infiltrate in the first place. But this reading makes repetitive the exclusion’s separate provisions for “the costs of correcting or making good” construction defects and “loss or damage ... caused by or resulting from” those defects. All of the examples offered by our colleague to show the exclusion’s effect deal only with “correcting” or replacing faulty construction, not *580 with damage “caused by or resulting from” the excluded faulty workmanship. TMW’s interpretation thus makes any mention of causation “nugatory,” Klapp v. United Ins. Group Agency, Inc., 468 Mich. 459, 663 N.W.2d 447, 453 (2003), falling into the same trap that it tries to push Federal into. Nor does TMW or the dissent even begin to explain away the countless other redundancies that fill this contract and others like it, which is why “applying the rule against surplusage is” often overrated, why “absent other indications” it is “inappropriate” to apply, Lamie, 540 U.S. at 536, 124 S.Ct. 1023, and why it is particularly inappropriate to apply here where it purports to resolve one set of redundancies while creating several others.
Second, the canon requiring us to construe ambiguous insurance contracts against the drafter makes no difference here for several reasons: (1) a disagreement among three judges about whether a contractual provision is ambiguous does not establish that it is ambiguous; (2) a case, see Blaine Constr. Corp. v. Ins. Co. of N. Am., 171 F.3d 343 (6th Cir.1999), arising under another State’s laws, involving differing contractual provisions and above all not including a comparable exclusion does not establish contractual ambiguity; (3) the anti-redundancy canon by itself cannot create contractual ambiguity, and that is all TMW has to establish the threshold requirement of contractual ambiguity mandated by the rule; (4) TMW must establish two reasonable, independently supportable interpretations, and it has not done so because the key premise of its interpretation (resolving contractual redundancies) is a false one, and a premise at any rate with which it cannot comply; and (5) our colleague ultimately takes the view that his interpretation is the right one, whether thumbs are placed on the scales or not, see Dissent at 15.
III.
For these reasons, we affirm in part and reverse in part.