NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0208n.06

Case No. 17-1934

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Apr 20, 2018

DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| KEY SAFETY SYSTEMS, INCORPORATED, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| AIG SPECIALTY INSURANCE COMPANY, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

BEFORE: GUY, SUTTON, and COOK, Circuit Judges.

COOK, Circuit Judge. A Georgia court awarded judgment of almost $4 million against Key Safety Systems ("Key") in a products liability action brought by a decedent's estate. After exhausting its appellate options without success, Key sought reimbursement from its excess carrier AIG Specialty Insurance Company ("AIG") for amounts owed in excess of its $2 million self-insured retention. This appeal considers whether that excess liability policy obligated AIG to cover certain post-judgment interest. Finding that the policy does not, the district court granted summary judgment to AIG. We agree with that court's reading of the policy and AFFIRM.

Case No. 17-1934, *Key Safety Systems, Inc. v. AIG Specialty Ins. Co.*

I.

The parties stipulated the following facts for purposes of their summary judgment motions:

1. AIG Specialty issued a commercial excess liability policy to KSS bearing policy number 8124373 for the policy period September 1, 2009 to September 1, 2010 (the "Policy").

2. The Policy is excess of a self-insured retention of $2,000,000 per occurrence, subject to all related terms in the Policy.

3. On September 21, 2009, KSS was sued in Georgia state court in a products liability action entitled *Estate of Penny Bruner v. Key Safety Systems, Inc., et al.*, case number 09C-16647-5, Gwinnett County, State of Georgia (the "Underlying Action").

4. The duty to defend is not at issue in this case.

5. Operating under its $2,000,000 self-insured retention, KSS hired counsel to defend it in the Underlying Action.

6. Operating under its $2,000,000 self-insured retention, KSS elected to try the Underlying Action to a jury.

7. On November 23, 2013, the jury in the Underlying Action returned a verdict in favor of the underlying plaintiff in the amount of $4,639,416 and apportioned 80% liability against KSS. Thereafter, the Court entered a Judgment against KSS in the Underlying Action in the amount of $3,711,532.80.

8. Operating under its $2,000,000 self-insured retention, KSS paid all fees and costs incurred in its defense of the Underlying Action through the conclusion of the jury trial.

9. KSS elected to appeal the Judgment entered against it in the Underlying Action.

10. Although KSS's self-insured retention had not yet been exhausted, AIG Specialty paid 50% of KSS's defense fees and costs incurred to appeal the Judgment. KSS paid the remaining 50%.

11. On November 19, 2015, the Court of Appeals of Georgia affirmed the Judgment against KSS.

12. KSS filed a petition for *certiorari* with the Georgia Supreme Court seeking review of the decision of the Court of Appeals of Georgia, which petition was denied on April 4, 2016.

13. Following the Georgia Supreme Court's denial of the petition for *certiorari*, KSS demanded that AIG Specialty pay all amounts owed by KSS under the Judgment – including all post-judgment interest – in excess of the $2,000,000 self-insured retention under the Policy.

14. In response, AIG Specialty denied that it owed any interest attributable to KSS's $2,000,000 self-insured retention.

15. On May 23, 2016, a Satisfaction of Judgment was filed with the trial court in the Underlying Action evidencing that the Judgment against KSS in the amount of $3,711,532.80, plus interest in the amount of $586,183.82, plus court costs in the amount of $2,517.40, had been paid.

16. KSS paid $2,306,808.46 of the Judgment against it, subject to a reservation of rights. This amount was comprised of KSS's $2,000,000 self-insured retention under the Policy, plus the interest owed on that $2,000,000 self-insured retention, in the amount of $306,808.46.

17. AIG Specialty paid the balance of the Judgment entered against KSS.

## II.

We review de novo the district court's grant of summary judgment. *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003). This is a diversity suit and Michigan law governs our interpretation of the contract. *See TMW Enters., Inc. v. Fed. Ins. Co.*, 619 F.3d 574, 576 (6th Cir. 2010). Just as a Michigan court would, we analyze the insurance policy as a contract and "must give effect to every word, phrase, and clause in [the] contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 453 (Mich. 2003). "It is the insured's burden to establish that his claim falls within the terms of the policy." *Heniser v. Frankenmuth Mut. Ins.*, 534 N.W.2d 502, 510 (Mich. 1995).

3

Case No. 17-1934, *Key Safety Systems, Inc. v. AIG Specialty Ins. Co.*

## III.

## A.

We start with the policy language pertinent to the parties' contentions on appeal.[1] The policy's Insuring Agreement limits coverage to specific damages as follows:

> **We will pay** on behalf of the Insured those sums in excess of the Self-Insured Retention that the Insured becomes legally obligated to pay as **damages** by reason of liability imposed by law **because of Bodily Injury** . . . .

Another section limits the damages that AIG will pay once the Self-Insured Retention has been satisfied:

> When the amount of **Loss** has been determined by . . . a final judgment, we **will** promptly **pay** on behalf of the Insured the **amount** of such **Loss** falling **within** the terms of the **policy.**

The policy then defines "**Loss**" as "those **sums actually paid as judgments** or settlements."

## B.

Key seeks to persuade that the policy required AIG to cover post-judgment interest by arguing that such interest is encompassed by the definition of "Loss." In support, Key constructs an argument around the Georgia statute that applies post-judgment interest automatically to all Georgia judgments. *See* Ga. Code Ann. § 7-4-12(c). And given that the Georgia court added interest to the judgment amount and required payment of that total in satisfaction of the judgment, Key contends that the post-judgment interest awarded in the Georgia judgment qualifies as "sums actually paid as judgments"—fitting post-judgment interest into the policy's definition of "Loss."

---

[1] All emphases in bold are added.

Key's argument stumbles out of the gate for several reasons. For one, the Georgia statute's wording distinguishes interest from judgments. It reads: "postjudgment *interest* . . . shall apply automatically to all *judgments* in this state and the *interest* shall be collectable as a part of each *judgment* . . . ." *Id.* (emphases added). AIG's policy defines "Loss" as "those sums actually paid as judgments"—not as those sums *collectable* with a judgment. Consistent with that distinction, both the underlying judgment and Satisfaction of Judgment filed with the Georgia court distinguish the interest from the principal. The Georgia statute thus offers no reason to avoid a natural reading of the phrase "sums paid as judgments" in the definition of "Loss."

"Loss" itself seems sufficient to foreclose Key's proposed reading, but the policy provisions directly addressing post-judgment interest bolster our conclusion. One provision requires AIG to cover post-judgment interest when AIG assumes an insured's (Key's) defense:

> **When we assume the defense** of any Suit against the Insured that seeks damages covered by this policy, **we will . . . pay . . . post-judgment interest** that accrues after entry of judgment on that part of the judgment within the applicable Limits of Insurance of this policy . . . .

The other instance triggering an obligation to pay interest is when AIG elects to appeal a judgment:

> **If we appeal, we will be liable for**, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and **interest on that amount of any judgment** which does not exceed the applicable Limits of Insurance of this policy . . . .

AIG's policy reflects consideration of the prospect that insureds would incur interest on judgments and provides for just two specific circumstances where it would step in to cover that interest expense. Reading the policy as a whole, such specificity forecloses giving credence to

claims to interest based on general provisions in this policy. We thus decline to read the definition of "Loss" as encompassing post-judgment interest.

Inasmuch as AIG neither assumed Key's defense nor elected to appeal, Key could not look to AIG to pay the interest accrued on its $2 million portion of the judgment here. Insurers may limit the risks they assume and may not be held liable for risks not assumed and for which they did not collect a premium. *See Sarkozy v. Hanover Ins. Co.*, No. 326454, 2016 WL 4543493, at *3 (Mich. Ct. App. Aug. 30, 2016) ("[P]erhaps the most fundamental rule of Michigan insurance jurisprudence is that an insurer can never be held liable for a risk . . . for which it did not charge or receive any premium." (citation omitted, alterations in original)); *see also Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 434 (Mich. 1992) ("It is impossible to hold an insurance company liable for a risk it did not assume."). A fair reading of the policy confirms that AIG limited coverage to certain damages for bodily injuries and only assumed responsibility for post-judgment interest in scenarios where it manages the litigation. *See Estate of Hunt by Hunt v. Drielick*, Nos. 333630–32, 2017 WL 6390073, at *7 (Mich. Ct. App. Dec. 14, 2017) ("The purpose of such clauses is to protect the insured when the insurer assumes the defense of a matter and therefore controls the timing of payment of any judgment that is entered against the insured."). Key undertook its own defense and appeals; it managed the clock here.[2]

Key circles back to highlight AIG's paying roughly $280,000 in post-judgment interest (amounts allocable to its share of the unpaid judgment) as belying AIG's no-interest-owed

---

[2] Key claims that other areas of the policy (such as the Self-Insured Retention section and Endorsement No. 6) could be consistent with its reading, but concedes that its interpretation of the policy depends on reading the term "Loss" to encompass post-judgment interest. As such, we need not address Key's remaining arguments.

reading of the policy. Inconsistent, yes—and beneficial to Key, yes. Whatever AIG's motive, however, its interest payment lends no strength to Key's appeal without some accompanying argument focusing on policy language obligating AIG to pay interest.

"Where the language of an insurance policy is clear and unambiguous, it must be enforced as written." *Auto-Owners Ins. Co. v. Harvey*, 556 N.W.2d 517, 519 (Mich. 1996). Key having pointed to no policy language sufficient to carry its burden to show coverage of post-judgment interest in these circumstances, we see no error by the district court and affirm its judgment.