**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 20-2319**

_____

BETHANY BOARDWALK GROUP LLC,

　　　　　　Plaintiff - Appellant,

　　　v.

EVEREST SECURITY INSURANCE COMPANY,

　　　　　　Defendant - Appellee.

_____

Appeal from the United States District Court for the District of Maryland, at Baltimore. Ellen Lipton Hollander, Senior District Judge.  (1:18-cv-03918-ELH)

_____

Argued:  September 13, 2022　　　　　　　　　Decided:  October 21, 2022

_____

Before GREGORY, Chief Judge, and KING and HARRIS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**ARGUED:**  Gregory Layton Arbogast, GEBHARDT & SMITH LLP, Baltimore, Maryland, for Appellant.  Peter James Jenkins, JACKSON & CAMPBELL, P.C., Washington, D.C., for Appellee.  **ON BRIEF:**  Lawrence J. Gebhardt, George B. Cunningham, GEBHARDT & SMITH LLP, Baltimore, Maryland, for Appellant.  Daniel J. Lynn, JACKSON & CAMPBELL, P.C., Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Plaintiff Bethany Boardwalk Group LLC ("Bethany") appeals from adverse rulings in which the District of Maryland denied its claim for insurance coverage under a commercial property insurance policy (the "Policy") issued in 2018 by defendant Everest Security Insurance Company ("Everest Insurance"). Bethany initiated this civil action in federal court in December 2018, seeking a declaratory judgment that Everest Insurance is obliged to provide coverage under the Policy for roof and other damages sustained to Bethany's hotel during a 2018 windstorm. By opinions rendered in 2020, the district court rejected Bethany's insurance claim and its efforts to pursue further proceedings. Bethany has appealed those rulings and, as explained herein, we affirm the comprehensive analysis made by the district court.

I.

A.

Bethany owns and operates a hotel called the Bethany Beach Ocean Suites Residence Inn in Bethany Beach, Delaware. Although the hotel has two buildings, only one — the North Building — is at issue here. When the North Building was constructed in 2015, a business called C.C.S. Roofing installed the hotel's thermoplastic polyolefin ("TPO") roofing system manufactured by Firestone Building Products. A properly installed TPO system should have withstood wind gusts of up to 55 miles per hour. Broadly, the TPO roofing system consists of a concrete base, on top of which the installers glue successive layers of polyiso insulation boards that form the slope and shape of the

2

roof.  The installers top off the insulation boards with a TPO membrane that completes the roofing system.

The Policy underlying this dispute, which is made up of numerous forms outlining the insurance coverage provisions and their limitations, generally provides that, as the insurer, Everest Insurance "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss."  *See* J.A. 95.[1]  The Business Income (and Extra Expense) Coverage Form of the Policy further provides that Everest Insurance "will pay for the actual loss of Business Income [that Bethany, as the insured] sustain[s] due to the necessary 'suspension' of [its] 'operations' during the 'period of restoration,'" so long as "[t]he loss or damage [was] caused by or result[ed] from a Covered Cause of Loss."  *Id.* at 111.

The Policy's Causes of Loss Form — which spells out the provisions at issue here — outlines situations in which the Policy will and will not provide coverage.  Specifically, the Policy provides coverage for certain perils, which the Causes of Loss Form designates as "Covered Causes of Loss."  *See* J.A. 124-33.  In general, a "Covered Cause of Loss" is any "direct physical loss unless the loss is excluded or limited" by the Policy.  *Id.* at 124.  Several specific Covered Causes of Loss are described therein, including "fire; lightning; explosion; *windstorm* or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action;

---

[1] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

3

falling objects; weight of snow, ice or sleet; [and] water damage." *Id.* at 133 (emphasis added).

Meanwhile, Section B(3) of the Causes of Loss Form identifies exclusions that preclude insurance coverage under the Policy. As pertinent in this appeal, Section B(3) provides as follows:

> 3. [Everest Insurance] will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c. *But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, [Everest Insurance] will pay for the loss or damage caused by that Covered Cause of Loss.*
>
> * * *
>
> c. Faulty, inadequate or defective: . . . Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction[.]

*See* J.A. 127-28 (emphasis added). The emphasized sentence of Section B(3) of the Causes of Loss Form is the specific Policy provision identified and discussed herein as the "ensuing loss clause." *See infra* section II.A.

On September 9, 2018, a windstorm struck Bethany Beach, Delaware, with wind gusts reaching 39.6 miles per hour and 0.11 inches of rain deposited. During the windstorm, the North Building's roof suffered a partial blow-off. As a result, the TPO membrane peeled back, exposing the polyiso boards and allowing rainwater to infiltrate the hotel's North Building. The infiltrating water damaged the drywall and carpeting in a hotel room and the ceiling of the hotel's restaurant.

As a result of the damages suffered by and in the North Building from the windstorm, Bethany submitted a claim under the Policy to Everest Insurance. Everest

4

Insurance accordingly dispatched a business called Applied Engineering and Technology ("AET") to inspect the damaged roof and the other damages and make a report to both Everest Insurance and Bethany assessing the cause of the damages to the North Building of the hotel (the "AET Report"). The AET Report concluded that the damages suffered were "mainly caused by improper installation of the Firestone TPO roof system." *See* J.A. 263. More specifically, the AET Report concluded that the polyiso insulation boards had been improperly glued together, which rendered the North Building's roof susceptible to wind uplift pressures. *Id.* As a result of the AET report, Everest Insurance denied Bethany's claim for insurance coverage, reasoning that "the damages sustained . . . were the result of faulty workmanship and improper installation," and faulty workmanship is an excluded cause of loss under Section B(3)(c) of the Policy's Causes of Loss Form. *Id.* at 375-76.

## B.

## 1.

In December 2018, Bethany initiated this civil action against its insurer Everest Insurance, seeking a declaration that the Policy covers "all damages and losses sustained by Bethany" as a direct or consequential result of the windstorm, plus prejudgment interest. *See* J.A. 18. At the outset, the parties agreed — and jointly advised the court by letter of February 12, 2019 — that resolution of this litigation primarily turns on the proper interpretation of the Policy's provisions. *Id.* at 34-35. They further advised the district court that the facts were largely undisputed and that it would be most efficient to first resolve issues of coverage and liability under the Policy and only conduct discovery later,

5

if necessary, on damages. As part of that letter agreement, Bethany consented to "accept the findings and conclusions of the expert retained by Everest [Insurance]" — that is, the AET Report. *Id.* Accordingly, with the court's authorization, the parties filed cross motions seeking summary judgment on the issues of coverage and liability.

2.

On March 5, 2020, the district court made its initial ruling, by which it denied Everest Insurance's request for summary judgment and partially granted Bethany's cross motion for summary judgment. *See Bethany Boardwalk Group LLC v. Everest Sec. Ins. Co.*, No. 1:18-cv-3918 (D. Md. Mar. 5, 2020), ECF No. 34 (the "Coverage Ruling"). More specifically, the Coverage Ruling concluded that the Policy required Everest Insurance to cover Bethany's costs incurred repairing the hotel's interior water damage and the resulting lost business income, because those damages and losses were caused by the windstorm, which is a Covered Cause of Loss. *Id.* at 28. The Coverage Ruling also determined, however, that the Policy did not oblige Everest Insurance to cover the costs of repairing the North Building's roof because that damage had been caused by faulty workmanship, which is an excluded cause of loss. *Id.*

Bethany promptly requested the district court to reconsider its decision in the Coverage Ruling that Everest Insurance was not obliged to pay for any of the repairs to the hotel's roof. Bethany claimed that Everest Insurance should pay for repairs to any portion of the hotel roof that had been properly installed but damaged during the windstorm. Bethany maintained that the AET Report only established that the polyiso boards had been improperly installed, but offered no opinion as to the TPO membrane. Bethany supported

6

its motion for reconsideration with the affidavit of an expert named Brad Kauffman, who had overseen the repairs to the North Building's roof. *See* J.A. 421 (the "Kauffman Affidavit"). Kauffman summarized the findings of his roof inspection, which confirmed the AET Report's conclusion that the polyiso boards had been improperly glued together, but opined that the TPO membrane had been properly installed onto the polyiso boards. Kauffman further opined that the cost of replacing the polyiso boards had been around $135,000, while replacing the TPO membrane had cost another $150,000. Accordingly, Bethany requested that the court reconsider the portion of its Coverage Ruling regarding coverage of the roof repairs and then require Everest Insurance to cover and pay for the replacement costs of the non-defective portion of the North Building's roof — that is, the TPO membrane.

After the Coverage Ruling was filed, Bethany also sought to amend its complaint, seeking primarily to add a claim for litigation expenses related to a third-party lawsuit that Bethany had pursued in a Maryland state court against C.C.S. Roofing, the entity that had installed the defective North Building roof in 2015.[2] Bethany also sought by its motion to amend to add allegations to the complaint that were drawn from the Kauffman Affidavit — specifically, that the TPO membrane had been properly installed, and that the costs of

---

[2] Bethany has acknowledged in its appellate submissions that the Maryland state court proceedings against C.C.S. Roofing have been settled. Pursuant thereto, Bethany recovered, according to its initial brief in this appeal, "both a substantial portion of its claim against Everest under the [P]olicy and its attorneys' fees and litigation expenses in the suit against Everest." *See* Br. of Appellant 14-15.

7

repairing the polyiso boards and of repairing the TPO membrane were separate and "distinct" costs. *See* J.A. 468-69.

For its part, Everest Insurance filed a second motion for summary judgment, requesting the district court to further declare that under the Policy's applicable deductible, Everest Insurance did not owe Bethany any coverage. More specifically, Everest Insurance contended that the expenses for which the court had found it liable — the interior water damage and resulting lost business income — did not exceed the Policy's $100,000 deductible.

3.

On December 2, 2020, the district court disposed of the three motions filed after the Coverage Ruling — those being Bethany's motion to reconsider, Bethany's motion to amend, and Everest Insurance's second motion for summary judgment. *See Bethany Boardwalk Group LLC v. Everest Sec. Ins. Co.*, No. 1:18-cv-3918 (D. Md. Dec. 2, 2020), ECF No. 55 (the "Final Decision"). First, the Final Decision denied Bethany's motion to reconsider, ruling that Bethany had failed to show that the Coverage Ruling was erroneous and did not allege any new or substantially different evidence. *Id.* at 16-18. The Final Decision then denied Bethany's motion to amend its complaint, reasoning that the proposed amendments were futile and, if allowed, would unduly prejudice Everest Insurance. *Id.* at 29. Finally, because Bethany did not dispute Everest Insurance's contention that Bethany's losses due to interior water damage and lost business income do not exceed $100,000 — the applicable deductible under the Policy — the Final Decision granted Everest

Insurance's second motion for summary judgment. *Id.* at 32. Bethany has timely noted this appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

On appeal, Bethany challenges the district court's judgment in multiple respects. First, Bethany challenges the Coverage Ruling's determination, in its denial of Bethany's summary judgment motion, that the Policy does not cover the costs of repairing the North Building's roof damage. More specifically, Bethany relies on the "ensuing loss clause" and maintains that the Policy covers all damages sustained as a result of the windstorm, including all damages to the North Building's roof. Next, Bethany challenges the Final Decision's denial of its motion to reconsider, contending that, even if the Policy does not cover the costs of repairing the entire North Building roof, it nevertheless covers the costs of repairing the TPO membrane, which had been properly installed but was damaged by the windstorm. Finally, Bethany challenges the Final Decision's denial of the motion to amend its complaint, contending that, if Bethany ultimately succeeds on its breach of contract claim, it is entitled to recover the litigation expenses incurred as a result of its state court proceedings against C.C.S. Roofing. We assess and dispose of Bethany's appellate contentions in turn.

A.

We first assess Bethany's contention that the district court erred in its Coverage Ruling partially denying Bethany's summary judgment motion by deciding that the Policy does not cover any of the costs of repairing the North Building roof. We review a summary

9

judgment ruling de novo, "applying the same legal standards as the district court and viewing all facts in the light most favorable to the nonmoving party." *See W.C. Eng., Inc. v. Rummel, Klepper & Kahl, LLP*, 934 F.3d 398, 402-03 (4th Cir. 2019) (internal quotation marks omitted). An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a).

In initially requesting summary judgment, Bethany maintained that Everest Insurance had improperly denied coverage that was required under the Policy. More specifically, Bethany identified and relied on the Policy's "ensuing loss clause," which provides that "if an excluded cause of loss that is listed in 3.a through 3.c [*i.e.*, faulty workmanship] results in a Covered Cause of Loss, [Everest Insurance] will pay for the loss or damage caused by the covered cause of loss." *See* J.A. 127. In other words, Bethany claimed that the Policy's ensuing loss clause provides for coverage when, despite the exclusions specified, "a separate, independent, and subsequent Covered Cause of Loss causes or contributes to the loss." *Id.* at 37.

Arguing its view of the applicable Maryland law, Bethany maintained that, because Section B(3) does not limit the degree to which the covered cause of loss must contribute to the claimed damages — which Everest Insurance could have accomplished by writing a more explicit Policy — the fact that a covered cause of loss contributed concurrently with an excluded cause of loss is sufficient to provide coverage for all damages to the North Building that resulted from the windstorm. Accordingly, Bethany requested the district court to declare that Everest Insurance was liable under the Policy for the costs of replacing

the North Building's entire roof, repairing the hotel's internal water damage, and compensating Bethany for the business income it had lost as a result of those damages.

Put most simply, we agree with the district court. Recognizing in its Coverage Ruling that state courts around the country are split between two approaches for interpreting an "ensuing loss clause," the court acknowledged that whether an ensuing loss clause provides coverage when a covered cause of loss and an excluded cause of loss concurrently cause damages is a novel question that the Maryland courts have not heretofore resolved. Under the majority approach taken by the states that have addressed that issue, an ensuing loss clause does not cover damages resulting in part from a defect when "the very risk raised by the flawed construction came to pass." *See TMW Enters., Inc. v. Fed. Ins. Co.*, 619 F.3d 574, 577 (6th Cir. 2010). Instead, the damages must result from "an independent or fortuitous intervening cause." *See Taja Invs. LLC v. Peerless Ins. Co.*, 717 F. App'x 190, 192 (4th Cir. 2017); *Costco Wholesale Corp. v. Commonwealth Ins. Co.*, 45 F. App'x 646 (9th Cir. 2002).

Under the minority approach, on the other hand, an ensuing loss clause will provide insurance coverage for damages caused by a covered cause of loss — even when an excluded cause of loss like faulty workmanship contributed to the damages — but not for the costs of repairing the excluded cause of loss. *See e.g.*, *Arnold v. Cincinnati Ins. Co.*, 276 Wis. 2d 762 (2004). In other words, that approach distinguishes between the original defective work and other property damages. *See e.g.*, *Eckstein v. Cincinnati Ins. Co.*, 469 F. Supp. 2d 445, 462 (W.D. Ky. 2007). For example, in the *Arnold* case, the Wisconsin Supreme Court ruled that, when a rainstorm leaked through defective caulking and caused

11

interior water damage, the ensuing loss clause provided insurance coverage for repairing the water damage — which was a cause of loss covered under the applicable policy — but not for repairing the faulty caulk, in that faulty workmanship was an excluded cause of loss under the applicable policy. *See Arnold*, 276 Wis. 2d at 719.

In its Coverage Ruling, the district court explained that it did not need to "predict how the Maryland Court of Appeals would read the ensuing loss clause, because the result is the same under either approach." *See* Coverage Ruling 27. That is, the Policy does not cover the costs of repairing the North Building roof, but it covers the costs of repairing the interior water damage and the resulting lost business income. As the court explained, it was undisputed that, "but for the defective installation, the roof should have withstood the wind." *Id.* at 28. Therefore, as the Coverage Ruling reasoned, the very risk implicated by the faulty workmanship — the roof being blown off — had actually occurred, and it would not be covered under the majority approach. Moreover, the North Building roof repairs also would not be covered under the minority approach because the improper adhesion of the polyiso boards was faulty workmanship, which Section B(3)(c) of the Causes of Loss Form excludes from coverage. The water damage to the hotel, on the other hand, was caused by the rain that occurred during the windstorm. Because water damage is not a risk implicated by the faulty workmanship on the North Building roof, and the windstorm — an independent and fortuitous intervening cause — is a covered cause of loss, there is coverage under the Policy for all other damages caused by the windstorm under both approaches that are utilized to interpret ensuing loss clauses. *Id.* at 28-29.

12

Put succinctly, we are constrained to reject Bethany's challenge with respect to the Policy's ensuing loss clause. That is, we agree with the district court that faulty workmanship — an excluded cause of loss — caused the North Building's roof damage. Everest Insurance is therefore not liable for the costs of any of the hotel's roof repairs under the ensuing loss clause.

B.

We turn next to Bethany's appellate contention that the district court erred in the Final Decision by denying Bethany's motion to reconsider the Coverage Ruling. That motion is pursued under Federal Rule of Civil Procedure 54(b), and we review the denial of such a motion for abuse of discretion. *See Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017). As a threshold matter, a trial court should only reconsider and revise an earlier ruling in three narrow circumstances: (1) if the trial produces substantially different evidence; (2) if there is a change in applicable law; or (3) when the court has committed a clear error resulting in a manifest injustice. *See U.S. Tobacco Coop. Inc. v. Big South Wholesale of Va., LLC*, 899 F.3d 236, 257 (4th Cir. 2018). Of importance, a motion to reconsider is not an opportunity for a losing party to present evidence that it could have presented before the adverse ruling. *See Carlson*, 865 F. 3d at 325. And it is not sufficient for a party to show that legal precedent could support an alternative resolution. As we have said, a successful challenge to a trial court's order under Rule 54(b) must be "wrong with the force of a five-week-old, unrefrigerated dead fish." *See TFSW, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009).

13

Simply put, we discern no abuse of discretion with respect to the Final Decision's denial of Bethany's motion to reconsider. By its motion, Bethany maintained that, because only the polyiso boards were improperly installed, the Policy requires Everest Insurance to cover the repairs to the TPO membrane. To support its position, Bethany relied on the AET Report, which concluded that the polyiso boards were improperly installed, and the Kauffman Affidavit, which confirmed that conclusion and opined that the TPO membrane was properly installed. The district court explained, however, that the Kauffman Affidavit did not present any new evidence. It simply highlighted material that was available to Bethany throughout the court proceedings. Moreover, Bethany failed to present any controlling precedent that would support its proposed position of isolating the costs of repairing the defective polyiso boards from the costs of repairing the assertedly non-defective TPO membrane. In these circumstances, the district court did not abuse its discretion in declining to reconsider its Coverage Ruling.

## C.

Finally, we turn to the contention that the district court erred in denying Bethany's request for leave to amend its complaint. We review the denial of such a motion for abuse of discretion. *See Laber v. Harvey*, 438 F.3d 404, 428 (4th Cir. 2006) (en banc). Federal Rule of Civil Procedure 15(a)(2) provides a court with wide discretion to grant a motion to amend when "justice so requires." That discretion, however, is not unlimited: a court should deny such a motion, inter alia, if the amendment would be futile or would prejudice the opposing party. *See Davison v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019). Generally, a proposed amendment will unduly prejudice the nonmoving party if it "raises a new legal

14

theory that would require the gathering and analysis of facts not already considered by the opposing party." *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (1986).

In these circumstances, we are satisfied that the district court did not abuse its discretion in ruling that Bethany's proposed amendments were futile or in deciding that its approval of them would unduly prejudice Everest Insurance. Bethany sought primarily to augment its breach of contract claim with a request for recovery of the litigation expenses it had incurred in pursuing its state court lawsuit against C.C.S. Roofing. Bethany was contending that Everest Insurance should be liable for those fees and costs under the collateral litigation doctrine, which can authorize the recovery of such items when the defendant's wrongful conduct has necessitated third-party litigation. *See E. Shore Title Co. v. Ochse*, 453 Md. 303, 330 (2017). Bethany also sought to make new factual allegations in its complaint that were predicated on the views set forth in the Kauffman Affidavit.

As the Final Decision ruled, however, Bethany's proposed new claim is futile because the collateral litigation doctrine does not apply here. Bethany had waited more than a year to initiate its state court lawsuit and failed to demonstrate to the district court that the state court litigation was a necessary result of Everest Insurance's denial of coverage. Moreover, the court did not abuse its discretion by ruling in the Final Decision that the proposed amendments would unduly prejudice Everest Insurance. Indeed, the parties had agreed to an expedited schedule and not to conduct discovery on the issues of coverage and liability. As the Final Decision recognized, it would unduly prejudice Everest Insurance to allow Bethany to produce additional evidence supporting a novel theory of

15

liability after initially losing on that issue.  Accordingly, the Final Decision did not err in denying Bethany's motion to amend.

III.

Pursuant to the foregoing, we are unable to identify any reversible error committed by the district court in the underlying proceedings.[3]  We are therefore satisfied to affirm the well-considered and thoroughly explained rulings made by the district court in the Coverage Ruling and in the Final Decision.

*AFFIRMED*

---

[3] With respect to the Final Decision's award of summary judgment to Everest Insurance, Bethany concedes on appeal that its claim for coverage of the interior water damage and loss of business does not exceed the applicable deductible of the Policy.  As a result, the summary judgment awarded to Everest Insurance in the Final Decision is proper unless Everest Insurance is liable for the North Building's roof damages.  Because we affirm the district court's ruling that Everest Insurance is not liable for those roof damages, the Final Decision's summary judgment award is not disturbed.  *See* Br. of Appellant 16.